JOHNNIE BRANCH, alias BUD BRANCH, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Division A.

Opinion filed July 20, 1928.

308

*Hutchins & Magruder* and *Jones & Jones,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, for the State.

Ellis, C. J.—The plaintiff in error was convicted of the murder of his father. The jury reccommended mercy, so the sentence was life imprisonment. He seeks a reversal of the jurgment on writ of error.

An examination of the "transcript of testimony" as reported by the court reporter discloses evidence abundantly sufficient to support the verdict.

The plaintiff in error, who was the son of the man killed, had been attacked by his father early Sunday morning on the 7th of February, 1926. The circumstances occurred in about the following manner: the accused Johnnie Branch, who lived with his father and mother and their family, arose early and went in the yard to the toilet. His father, the deceased, came to the door of the little house, opened it and struck his son with a stick. The mother of the defendant called to her husband who immediately returned to the house. The defendant left the premises and went to a house some distance away and procured an automatic pistol from an acquaintance. Armed with that weapon he returned to the house, went to his room and began packing his clothes preparatory to leaving, according to his statement. Seeing his father near the front door he went to him and asked why his father had treated him as he did. An altercation occurred between them and the defendant shot his father several times producing wounds in the latter's body which almost instantly produced death.

It appears that some unpleasantness had existed between the father and the son, who was about twenty-three years old, occasioned by the latter taking money, quite a large sum, from his father and going off to another state with it from which he was brought back by an officer on the father's complaint.

The defense appeared to have been justifiable homicide because of self defense. There is nothing in the court re-

porter's transcript of the testimony upon which to rest the theory that the defendant killed his father while resisting an attempt of the latter to murder the former or to commit any felony upon him, or that the homicide was committed by the defendant in the lawful defense of himself when there existed reasonable ground for his apprehension that his father designed to commit a felony upon him or to do him·some great personal injury and there was imminent danger of such design being accomplished.

There was a conflict between the defendant's testimony and that of other witnesses as to whether the deceased at the time he was killed by his son had a water glass or a pistol in his right hand.·A shattered water glass was found near the body immediately after the shooting and particles of glass were found in the right hand of the deceased. The defendant, however, said that his father held a pistol in that hand from which he, the defendant, removed it immediately after the shooting. There was some evidence that when the son renewed the conversation in the house with his father the latter made a gesture toward his "back" pocket, the inference being that such a gesture was a threatening one. The jury, however, whose province it was, resolved those differences against the defendant at least in so far as that even if the gesture was made by the deceased it did not under the circumstances afford reasonable ground upon which the accused could entertain apprehension of great bodily injury to himself and imminent danger of its being accomplished. See Collins v. State, 88 Fla. 578, 102 So. R. 880.

A motion was made for a new trial on newly discovered evidence and other grounds which was overruled.

The errors assigned as numbers nine, ten, eleven, twelve, thirteen, fourteen and fifteen relate to the tenth ground of the motion for a new trial on newly discovered evi-

dence. That ground of the motion relates that Rossell O'Neal and Julian Branch would testify that the deceased "had drawn his gun or weapon upon the defendant before the defendant shot him and that the defendant shot the deceased in his necessary self defense."

The latter portion of such proposed evidence would not be permissible as it is solely the province of the jury from the facts in evidence to decide whether the drawing of a "gun" on another under the circumstances constituted reasonable ground to believe that bodily harm was intended by such act to be inflicted upon the defendant and that he had reasonable ground to apprehend imminent danger of its being accomplished. Again, the phrase "had drawn his gun or weapon upon the defendant" is more or less veiled in some obscurity of meaning. What constitutes a drawing of a weapon upon another so that the other has reasonable ground to apprehend its immediate use upon him to justify the taking of life is a question for the jury. The deceased may have "drawn" a weapon, that is to say, taken it from his pocket or procured it from some other place and yet in the circumstances the fact would not have evidenced an intention to use it upon the other. The phrase used in the affidavit contained a subtle insinuation of the motive of the deceased.

It is true that the phrase "He drew his pistol" is a common one but it is equally true that it invariably implies the motive with which it is drawn. To say that one drew his pistol on another implies that he did so with the motive of shooting that other with the weapon. Now by a long line of authorities the rule is well established that a witness is not permitted to testify as to the undisclosed intention or motive of a third person, that the witness must be confined to a statement of facts leaving it to the jury to draw the proper inferences as to what were the

party's intentions or motives. See Dixon v. State, 13 Fla., 636; Hodge v. State, 26 Fla. 11, 7 So. R. 593.

The same rule which obtains in construing a motion for a sontinuance in a criminal case that it should be scanned with more care than in a civil case obtains in construing a motion for a new trial on newly discovered eveidence. The latter are looked upon by the courts with distrust and disfavor. The evidence must have been discovered since the former trial; the defendant must have used due diligence to procure it on the former trial; the evidence proposed must be material to the issue; it must go to the merits of the cause and not merely to impeach the character of a witness; it must not be cumulative and it must be such that in another trial it will produce an opposite result on the merits. See Howard v. State, 36 Fla. .21, 17 So. R. 84; Mitchell v. State, 43 Fla. 584, 31 So. R. 242; Robinson v. State, 50 Fla. 115, 39 So. R. 465; Herndon v. State, 73 Fla. 451, 74 So. R. 511.

The evidence in this case raises no grave doubt as to the defendant's guilt, therefore the rule should not be relaxed. See Adams v. State, 55 Fla. 1, 46 So. R. 152.

The affidavits in support of the motion and those offered against it are not contained in the bill of exceptions. They perhaps should not therefore be considered as they were purely matters *in pais* and constituted no part of the record. The Act of 1927 Chap. 12019 was intended however to cure imperfections in making up transcripts of the records of causes tried in court but its language is by no means clear. A motion for a new trial is not part of the record of a cause nor are the affidavits offered in support of it. They are matters which occur *in pais* like the testimony of witnesses, or motions for a continuance or questions to proposed jurors on the *voir dire*. If the defendant in a criminal case or either party in a civil case

deems himself to be substantially injured by the court's ruling in any such matters arising at the trial he causes a memorandum of the ruling to be prepared and afterwards incorporates it in a bill of exceptions which in due time is properly authenticated when it then, and only then, becomes a part of the record. Now the statute provides that a motion, pleading, proceeding, document or other matter exhibited only by the record proper when it should have been exhibited by a bill of exceptions shall be considered by the appellate court with the same force and effect as if it had been exhibited in its proper place in the transcript of record provided the same appears in the transcript so that it may be definitely identified by the appellate court and so exhibited as to import authenticity. See Sec. 3, Chap. 12019 Laws 1927.

A correct transcript of the record of a cause tried at law in the circuit court will not show a motion, proceeding, document or other matter occurring at the trial because such things are not exhibited by the record and to import authenticity such matters should be certified by the trial judge as having transpired at the trial. Pleadings are exhibited by the record, but a document offered in evidence whether received or rejected, a motion for a new trial and the affidavits on which it rests, the testimony of a witness and exceptions based on rulings as to the admission or rejection of the same without doubt of propriety be referred to as "other matter" but it is equally certain that such "other matter" is not exhibited by the record and has no place in the transcript of the record proper. If such matters should through negligent properation of a transcript, or by design appear in a document filed in the appellate court and called a transcript of the record the authenticity of such matters would not be apparent and their mere appearance in the so-called transcript would

not of itself import authenticity in the absence of a certificate by the judge that such matters occurred, such evidence was received or rejected, or such motion was made and document offered.

It is no business of the clerk to preserve them of record. He is not the legal custodian, for example, of an oral motion or other proceeding occurring at the trial of a cause nor the court's ruling or orders made in many matters occurring at the trial. He is no more the custodian of such "other matters" than a bystander and his certificate of their authenticity of no more value. Yet the certificate of a bystander would scarcely be deemed to give authenticity to the matter. The statute above mentioned constitutes a fair illustration of the inefficacy of legislative attempts to perfect, make simple and clarify the so-called intricacies of legal procedure. Its effect, if the possible intent is written into the Act, is merely to put a premium upon supineness at the bar.

In this case, however, the motion for a new trial is contained in the bill of exceptions, and appended to the motion over the judge's signature is the statement that certain affidavits were offered as evidence for and against the motion. These are marked so that they may be identified as they appear elsewhere in the transcript and being so identified may be said to be so exhibited as to "import authenticity." How much more convenient, more simple and therefore more efficient would have been the incorporation of them, however, at the correct place in the bill of exceptions and the complete eliding of them and the motion from the other part of the transcript.

The affidavit of Rossell O'Neal states that "she saw Andrew Branch shove Johnnie Branch backward and pull a revolver out of his right hip pocket with his right hand and pointed the same at Johnnie Branch before Johnnie shot her father, that then Johnnie shot him four or five

times and her father fell and Johnnie wrenched the pistol out of his hand and hollered loudly and then walked away with both guns.''

The affidavit of Julian Branch is a little stronger in that it states that Andrew Branch after taking the pistol from his pocket ''attempted to shoot Johnnie with same.'' The two affiants are the sister and brother of defendant. They lived together in the same house. They were present and were eyewitnesses to the difficulty. Of those facts the defendant was fully aware at the time of the shooting and at every moment thereafter to the moment of his trial and conviction. Nowhere in the motion for a new trial or the affidavits in support of it is it shown that the defendant was ignorant of the fact that the witnesses named saw the transaction as it occurred. If it occurred as set out in the affidavits the witnesses must have seen it because they were eyewitnesses to the transaction and the defendant knew that they were. It is therefore apparent that the evidence was not discovered after the trial and that if the defendant did not impart the information to his counsel he did not use due diligence to procure it as evidence and that if he informed his counsel of it before trial diligence is not shown on their part to procure it. If the evidence existed, in fact, no subpoenaing of the witnesses by the State or placing them at the trial under the rule or failure to call them in the State's behalf would have been effective as a measure precluding the benefits of their testimony to the defendant, even if such harsh supposition could be invoked against the ethical practice of the State's attorney. No one before a trial is precluded by law from consulting witnesses to a transaction and through them ascertaining the facts, nor even after they are placed under the rule at a trial could it be supposed that either the court or the State's attorney upon a proper showing in an honest

and good faith effort to procure the facts would decline to give counsel the privilege of interviewing a witness.

We are of the opinion that there is nothing contained in the motion or the affidavits supporting it which required the trial judge to set aside the verdict and grant a new trial. The order overruling the motion therefore was not erroneous.

In this view of the case the question whether the judge should have sustained exceptions to the reading of the affidavits in opposition to the motion becomes immaterial.

The defendant testified in his own behalf and was the only witness for the defense. Upon his cross examination it was shown that he had always lived with his father but at one time he went to the State of Georgia and was brought back home by some one whose name the defendant could not recall. The State's attorney then asked if it was an officer, to which question the defendant's counsel objected. The objection was overruled, to which ruling an exception was taken but the question was not answered.

This transaction is discussed under the second division of the brief but it is not made the subject of any assignment of error.

No objection was made to questions eliciting the fact that the defendant had stolen $800.00 from his father and had been brought back home for that reason, but the objection seemed to be to the State's effort to show that the person who brought the defendant back was an officer. As the question was not answered the exception became ineffective.

A witness named Mose Branch, a son of the deceased, testified for the State. Upon cross examination by defendant's counsel the witness gave an affirmative answer to a leading question by defendants counsel which elicited the fact that immediately upon being accosted by the

son in the house the father "reached his hand back to his hip pocket." On direct examination the State had shown that the deceased kept a pistol in the house. Counsel for the defendant then propounded to the witness the following question: "Q. You did not see the gun or see what he went after, but you know that he did go back to his pocket in a threatening manner?" And the witness answered: "Yes Sir".

Then ensued a controversy between counsel as to what the evidence at that point had shown concerning the altercation between father and son. The court without objection or motion made announced that it "would strike the question and instruct the jury to disregard that question and answer."

A witness may testify as to the conduct, demeanor or manner of another and in so doing may use words which amount to a characterization of the same. See 5 Enc. Ev. 674.

While in this case it was not the witness but counsel who characterized the manner as threatening, the witness assented to such characterization and both question and answer were stricken. The Court might have disallowed the question in the form in which it was framed because it undoubtedly put the answer in the mouth of the witness, who could have himself characterized the gesture as threatening, but in view of the manner in which the trial was conducted we think it would be unjust to the defendant if not decidedly unfair to him to make this distinction. It was evidently the purpose to exclude the testimony of the witness as to the manner of the deceased when he put his hand back to his hip pocket. If it was done in a threatening manner the witness should have been permitted to say so and we cannot say that depriving him of the bene-

fit of that slight circumstance did not deprive him of a substantial right.

There is no merit in the other errors assigned.

Mr. Justice BROWN and the writer concur in the view expressed above upon this point and thing that substantial error was committed by the ruling. Mr. Justice BROWN also thinks that the motion for a new trial should have been granted. But Mr. Justice WHITFIELD, Mr. Justice TERRELL, Mr. Justice STRUM and Mr. Justice BUFORD are of the opinion that the error, if any, was cured by the subsequent testimony of the same witness and that in view of the provisions of Sec. 2812, Rev. Gen. Stats. of Fla., 1920, the judgment should be affirmed because they say that an inspection of the entire record shows that the error complained of has resulted in no miscarriage of justice.

It is therefore ordered that the judgment be and the same is hereby affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.