SOLOMON MILTON v. STATE.

192 So. 219

Division B

Opinion Filed September 29, 1939

Rehearing Denied December 1, 1939

618

*C. N. Ashmore,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, *Tyrus A. Norwood* and *Thomas J. Ellis,* Assistant Attorneys General, for Defendant in Error.

PER CURIAM.—Solomon Milton was indicted by the grand jury of Leon County, Florida, being charged with the murder in the first degree of Margaret Haynes. He was arraigned, plead not guilty, was tried and, by the jury, found guilty as charged without recommendation to mercy. Motion for new trial was denied, and final judgment of conviction and sentence of death was entered upon the verdict. From that judgment writ of error was taken.

The principal question presented by counsel for plaintiff in error is whether the court should have given the jury an instruction on the subject of "alibi."

The bill of exceptions as certified here does not show the proceedings said to have occurred after the court finished giving his instructions to the jury, which instructions failed to include a charge relating to alibi. The following affidavit, however, was made by J. Lewis Hall, an attorney at law, who heard part of the trial:

"STATE OF FLORIDA

"LEON COUNTY.

"Personally appeared before me the undersigned authority, J. L. Hall, who upon oath deposes and says that he is an attorney practicing law in Tallahassee, Florida, and that he was present during part of the trial of Solomon Milton in the Circuit Court of Leon County, Florida, on December 6th, 1937, and that after the defendant concluded testifying and announced to the court that he rested his cause, the circuit judge began to charge the jury; that after the

judge concluded his charge the State's attorney prosecuting said defendant arose and stated as follows to the court:

"'What about alibi, Judge?' Whereupon the court replied, 'It is not necessary in this case,' and that the cause was submitted to the jury.

"(Signed) J. LEWIS HALL
Affiant.

"Sworn to and subscribed before
me this 25th day of May, 1939.

DORRIS LEWIS (Signed)
"(N. P. Seal)     Notary Public State of Florida at Large
My Commission Expires July 9, 1940."

The Attorney General's office and counsel for plaintiff in error then entered into the following stipulation:

"It is herein and hereby agreed and stipulated by counsel for the respective parties that the affidavit filed herein made by J. Lewis Hall be made a part of the transcript in the foregoing cause as if same were copied therein with reference to alleged request by counsel for the charge of alibi;
May 26, 1939    (Signed) THOMAS J. ELLIS for Atty. Genl.
(Signed) C. N. ASHMORE."

This stipulation provided that the affidavit be made a part of the transcript. Even if the affidavit had been incorporated in the record proper in the first instance, we could not consider it, because it is matter *in pais* occurring at the trial and should be made a part of the bill of exceptions so that it might be properly authenticated by the trial judge. See Jarvis v. State, 115 Fla. 320, 156 So. 310; Mungin v. State, 109 Fla. 310, 147 So. 577; Branch v. State, 96 Fla. 307, 118 So. 13. For we cannot hold a trial judge to be in error on his ruling on a matter *in pais* occurring before him in the conduct of a trial, unless such matter is properly

authenticated as having occurred before the trial judge, in accordance with statutory provisions.

In this connection, we said, in the case of Preston v. State, 116 Fla. 115, 156 So. 285:

"The Supreme Court is without jurisdiction to grant a motion permitting any paper to be considered as a bill of exceptions, which has not been either presented to the circuit court for its consideration or allowed as such, in one of the forms of law provided for taking and preserving bills of exceptions in the lower courts, even though it be established or admitted that the proposed paper is in all respects the equivalent of a legal and proper bill of exceptions in the cause."

We now come to the proposition as to whether the trial judge should have given an instruction on "alibi" in the absence of any request to do so.

Section 4365 (2698) C. G. L. 1927, provides:

"If either of the parties, or their attorneys, present to the judge instructions in writing on any point of law arising on the trial, it shall be the duty of the judge to declare in writing to the jury his ruling thereupon as presented, and pronounce the same to the jury as given or. refused."

This statute was enacted as Section 1 of Chapter 2096, Acts of 1877.

In discussing the interpretation to be given this statute, this Court, in the case of Blount v. State, 30 Fla. 287, 11 So. 547, said:

"Counsel for plaintiff in error contend that it is the duty of the trial judge, whether requested to do so or not, to instruct the jury as to all the law applicable to the facts which have been proven, and a failure to so instruct is reversible error. It is clearly the duty of the court to instruct the jury on the law of the case, that is upon the law

applicable to the facts proven in the case, and a refusal to give such instructions when asked, would of course be error. But, under our practice, it has been settled by adjudications that if a party wishes to avail himself of the omission of the court to charge the jury on any point of the case, he must ask the court to give the instruction desired, otherwise he will not be permitted to assign it as error. In Duggan v. State, 9 Fla. 516, the point was made that the record did not show that the judge filed the charge which he gave to the jury, as provided by law. The statute provided that charges to juries in criminal cases should be reduced to writing and filed in the case, and should be exclusively on points of law. Chapter 138, Sec. 8, Laws of 1848. It was held that the record did not show that the trial judge had instructed the jury at all, and hence there was no error in not filing instruction. This was a capital case and the judgment was affirmed, although, as held by the court, no instructions at all were given. A year before the Duggan case was decided, it was held in Cato v. State, 9 Fla. 163, that 'if the court assumes to charge the jury, it ought to charge the whole law, but if a party desires to avail himself of any failure or omission in this respect, he must call the particular point to the attention of the court, otherwise he will not be permitted to assign the omission for error. In the case of Long v. State, 11 Fla. 295, decided in 1866 or 1867, it was held that the judge may omit to charge the jury without error, when no instructions are specially requested in writing, but when he charges the jury he must confine himself to the law applicable to the case, and reduce his charge to writing before it is delivered. These decisions were made while the statute of 1848, Chapter 138, was in force; but since the enactment of the statute of 1877, *supra,* (Chapter 2096) this Court has announced the same rule.

"In Irvin v. State, 19 Fla. 872, the fourth assignment of error was, that the court erred in not instructing the jury as to what constituted murder in both the first and second degrees. It is said in the opinion: 'No exception was reserved to the charge, or any portion of it, and by the decisions of this Court often repeated, no exception thereto can be taken here on writ of error. The attention of the court below should have been called to the error alleged, at the time, and the instruction asked for should have been written out as provided by the laws, and presented to the judge, who would have declared in writing his ruling thereon as presented, and pronounced the same to the jury as given or refused.' See also Reed, Story and Sullivan v. State, 16 Fla. 564; 93 U. S. 393. Counsel for plaintiff in error say this Court has, in the case of Hicks v. State, 25 Fla. 535, 6 South. Rep. 441, said, by implication at least, that it is the duty of the judge to instruct the jury upon all the lower grades of homocide to which the testimony might be applicable. This court has said in the past, and now repeats it, that it is the duty of the trial court to instruct the jury on all the law applicable to the facts proven in the case, but the court has not said in the Hicks case, or in any other case, that if the court fails or omits to charge on the law applicable to some phase of the case, the defendant can avail himself of this omission, without first requesting the court to charge on the point or points desired to be submitted to the jury. The reverse of this proposition is the settled practice in this State. In the Hicks case, *supra,* an objection to the charge of the court was made on the ground that the court did not charge as to the relative degrees of manslaughter. It does not appear whether or not the court was requested to charge in reference to the degrees omitted. The decision was, that there was no error in the charge of

the court, because the evidence in the case did not in any sense apply to the degree or degrees of manslaughter omitted in the charge. There is no doubt about this being the settled doctrine in this State, and the court is not compelled to charge on the law not applicable to the facts of the case, whether requested or not. Of course where the facts of the case call for or authorize a charge from the court on them, it would be error to refuse when requested. Counsel for plaintiff in error refer us to numerous decision in support of the proposition, that it is error for the court to omit to charge all the law applicable to the facts of the case, whether requested or not, but we do not feel disposed to go into a discussion of them in this opinion. They are opposed by numerous other well-considered decisions; besides, are directly in conflict with adjudications of our own Court, as indicated above. We do not feel at liberty to reverse the repeated decisions of this Court on this subject, especially when they are sustained by so many well-considered cases in other courts. No exceptions having been taken to the charge of the court, or any part of it, and no instructions having been asked by the accused, no questions are presented for our consideration by the first and third assignments of error.

"In what is said above we do not desire it understood that we concede that the facts of this case called for any further charge than that given by the court, even if it had been requested." See also Taylor v. State, 98 Fla. 881, 124 So. 445; Graives v. State, 127 Fla. 182, 172 So. 716.

Thus it has been settled by prior decisions of this Court that in order for defendant to assign as error the omission of the trial court to instruct the jury on a particular phase of the law, the matter should be called to the attention of the trial judge in an appropriate manner. Neither the bill of

exceptions nor the record proper in this case indicates that the attention of the trial court was called to the fact that an instruction on alibi was desired. Likewise the motion for new trial failed to call the attention of the trial judge to his omission to charge on the law of alibi.

However, we do not think the facts of this case warranted an instruction by the court on the law of alibi, because of the inconclusive nature of the testimony as to the whereabouts of the defendant during the time, on the night the murder occurred, it was possible for defendant to have been present at the scene of the crime and to have committed the murder as charged in the indictment. The defendant, who was the only witness to testify in his own behalf, gave the following testimony as to alibi.

"And when I got ready to leave (the school) I had a little in a bottle drinking that. I had been drinking all of the afternoon I guess on, and starts on and got out on the road. I thought if she (Margaret Haynes) came (to the school closing) I might be gone and miss her, and I thought I would be back (to the school) and certainly wait for her. She didn't come close on 10 o'clock, and I turned then and goes home. I was pretty full; I had some buck that night, and that was my reason for running back (to his home) from the school closing. I was pretty full. I had my keys in a little sack and opened the door and went in. I was pretty hungry, and found I hadn't had supper yet, and I brought it out. I started up (to his father's house) and thought there would probably be a terrible fuss with me about drinking, so I turned around and goes back (to his home), opened the door and that's the last I remember is going inside. If I come to town it is nothing I know about. If I come to town and shot two people I am compelled to know something about it.

"The last I recall is when I started to go home in my house. The last I remember was when I came back and opened the door after I had started to my father's and come back."

According to the defendant's own testimony, the last thing he remembered that night was going inside his own house after he had started to go to his father's house. This could have been shortly after ten o'clock because defendant testified that he left the school closing shortly before ten o'clock, and ran home, then ate something, and started to his father's house but did not go. Defendant lived in the Centerville section about six or seven miles out in the country; and deceased lived on Copeland Street about a block from the northeast corner of the campus of the Woman's College in Tallahassee. Taking this testimony of defendant as true, his whereabouts after he returned to his house and didn't go to visit his father, during which it was possible for him to have been at the scene of the murder, was not accounted for. It would have been possible for defendant to have come to town after that, to have committed the murder and to have returned home, because various State witnesses testified that the murder occurred at times ranging from eight to eleven o'clock, or "before midnight." Defendant did not deny that the murder occurred at any of the times testified to, and did not introduce any evidence to show when it did occur; and yet defendant did not account for his whereabouts during the whole of the period of time when the murder could have been committed. No other witness corroborated defendant's testimony as to his whereabouts that night; and none testified as to his whereabouts during the interim concerning which defendant did not remember. The evidence was therefore incomplete and insufficient upon which to predicate an instruction on alibi.

It is also contended that there was not sufficient evidence to show a premeditated design on the part of defendant to effect the death of the deceased.

Anne Davis, who lived in the north half of the house in which deceased also lived, testified that on the night of the murder, defendant walked through deceased's part of the house, and when he found deceased and Paul Robinson in a car in front of the house, inquired in a profane manner what they were doing there, and then shot his pistol twice. Paul Robinson, who was with deceased that night and who was shot in the face, testified in effect to the same thing. Bob Carter, who worked at the "Silver Moon" cafe near deceased's dwelling, testified that about 9:00 or 9:30 o'clock on the night of the murder defendant came in the cafe, drank a bottle of beer, and inquired of witness if his wife had been in there, stating that he understood she was meeting Fennie's brother there and at Fennie's place, that he and the officers were looking for her, and it would be too bad when they found her. (Paul Robinson was not Fennie's brother.) Bob Carter also testified that as defendant was leaving the cafe that night a black pistol fell from his pocket, which defendant picked up, put back in his pocket, and continued on his way without saying anything further. David and Susie Watson testified to bringing defendant in their car from the school closing that night to Byrd's Grocery Store, where he left them.

The premeditation or deliberation necessary to prove a charge of murder in the first degree need not be for any particular length of time, but it must be of sufficient duration to enable the defendant, under the circumstances of each case, to form a distinct and conscious intention to kill. The question of premeditation is one of fact for the jury. See Lovett v. State, 30 Fla. 142, 11 So. 550.

There is sufficient evidence in this record upon which the jury could have found that the defendant, under the circumstances as related by the witness, had ample time to conceive and formulate in his mind a premeditated or deliberate design or plan to effect the death of the deceased, which design or plan he later carried into effect. We are not warranted in disturbing the finding of the jury' in this regard.

No reversible error having been made to appear, the judgment below is accordingly affirmed.

Affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

THOMAS, J., concurs in opinion and judgment.

Justices TERRELL and BUFORD not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON PETITION FOR REHEARING

PER CURIAM.—In a petition for rehearing it is urged that the affidavit referred to in the opinion should have been considered by the Court. The affidavit is on a sheet of paper not filed in the trial court nor authenticated by the trial judge, and it is in no way made a part of the transcript of the record proper or of the bill of exceptions, which latter was authenticated by the trial judge. Stipulation of counsel that the affidavit may be made a part of the transcript cannot legally make it so, at least unless it is authenticated by the trial judge. As the affidavit was not incorporated in the bill of exceptions approved by the trial judge or incorporated in the transcript of the record proper "so that it may be definitely identified by the appellate court and so exhibited as to important authenticity," as required

by Section 4612, C. G. L., it cannot be considered in this Court. Preston v. State, 116 Fla. 115, 156 So. 285. The Court did not overlook but fully considered all the matters that were duly presented for adjudication.

Rehearing denied.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.