FRED HOWLAND, INC., v. WALTER P. MORRIS.

196 So. 472
Division B
Opinion Filed May 24, 1940
Rehearing Denied June 11, 1940

*Blackwell & Walker,* for Plaintiff in Error;

*E. F. P. Brigham* and *Gramling & Gramling,* for Defendant in Error.

PER CURIAM.—Writ of error from the circuit court of Dade County, Florida.

Defendant in error, Morris, plaintiff below, was a building inspector in the employ of the City of Miami. Walgreen Company was having a building constructed on its city property and plaintiff in error, Fred Howland, Inc., defendant below, was the general contractor in charge of

construction. · Walgreen had a superintendent in its own employ present at the building in general supervision of Walgreen's interests.

While present in the building on a tour of inspection of the electrical equipment Morris fell through what is known in construction work as a "pan" and was injured. The pan was one of a series of forms into and upon which concrete would be poured to constitute the mezzanine floor of the building. Verdict against Fred Howland, Inc., was rendered in favor of Morris for $11,250. From a final judgment for this amount, Fred Howland, Inc., brings this writ of error.

Pursuant to Section 7055 (4968) C. G. L. defendant by motion requested compulsory physical examination of plaintiff, Morris. Judge Atkinson, on March 7, 1939, granted this motion, appointed Dr. Tallman as the physician before whom such examination was to be made, and further providing that "plaintiff may, if he so elects, have his own physician present at the time of this examination."

The examination was had without plaintiff's doctor being present, and subsequently an order was entered by the court on motion of plaintiff that he be presented with a copy of Dr. Tallman's report. Through assignments of error numbered `35, 42, and 43, this action on the part of Judge Alto Adams, acting in the absence of Judge Atkinson, is here for review.

In their briefs on this question, both parties cite cases from other jurisdictions wherein statements similar to the following are made: "Certainly a lawsuit should not be a game of chance; one side should not have an advantage over the other." There is much emphasis laid upon the fact that it would be manifestly unfair to defendant to require him to disclose what his witnesses will testify. On the other hand, defendants argue that no harm is done by requiring

plaintiff to disclose the facts around which his case is built, not only through requiring him to submit to compulsory pre-trial physical examination, but also pre-trial oral examination.

While to some they may seem to go too far with their liberal practices, these rules are designed to speed up and simplify practice in the federal courts, and do so with excellent results. In the modern fast-moving world the trend is toward faster methods of procedure, without, of course, sacrificing any of the fundamental rights of the parties.

At common law a compulsory examination of plaintiff was unheard of and would have been denounced as a most iniquitous practice. In Union Pacific R. Co. v. Botsford (1891), 141 U. S. 250, 11 S. Ct. 1000, 35 L. Ed. 734, the U. S. Supreme Court said:

"The single question presented by this record is whether, in a civil action for injury to the person, the court, on application of the defendant, and in advance of the trial, may order the plaintiff, without his or her consent, to submit to a surgical examination as to the extent of the injury sued for. We concur with the circuit court in holding that it had no legal right or power to make and enforce such an order.

"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity; to be left alone.' Cooley on Torts, 29."

However, in tune with changing conditions, Florida in 1899, by statute (Section 7055 [4968] C. G. L.) provided

for compulsory physical examination, omitting to make any mention of what should be done with the report of the examining physician, but placing no restrictions on its use. It is provided that the examination may be made in the presence of either the physician of plaintiff or one of his other attendants.

In Stoczynski v. Croft (1938), 166 Misc. 553, 2 N. Y. S. (2d) 740, the New York court had this same question about allowing plaintiff to have a copy of the doctor's report up for discussion. In holding that the report should not be delivered to plaintiff, that court said:

"The most recent recorded opinion on the subject is that of the Federal District Court of the Eastern District of New York by Moscowitz, District Judge. There Judge Moscowitz ordered that the copy of the report be furnished to the plaintiff. In support of his ruling he made the statement: 'Certainly, a lawsuit should not be a game of chance, one side should not have an advantage over the other. If the defendant is entitled to a copy of the report, the plaintiff is likewise entitled to receive a copy.' Mitchell v. Pure Oil Co., 1937, D. C., 20 F. Supp. 1021. * * *

"The decision in the Kelman case above cited (202 App. Div. 487, 195 N. Y. S. 313) follows the reasoning and the decision of Mr. Justice POUND (later Chief Judge of the Court of Appeals), at Special Term in Mizak v. Carborundum Co., 75 Misc. 205, 208, 132 N. Y. S. 1104, 1106, affirmed 151 App. Div. 899, 135 N. Y. S. 1128, this Fourth Department. In his opinion, Mr. Justice POUND refused the request of the plaintiff for a copy of the physician's report. The ground given by him for such refusal is revealed in the following quotation from his decision at Special Term: 'A defendant in a negligence case may not be compelled to disclose before trial what the physical ex-

amination of plaintiff by its physicians reveals, any more than it may be compelled to disclose what it expects to prove by its other witnesses.'

"The reasoning of Mr. Justice POUND appeals more to this court than that of Judge Moscowitz. If Judge Moscowitz' reasoning could be followed out to the extent that 'one side should not have an advantage over the other' then, it might be said with equal reason that either party could compel the other party to present to the party demanding the same the statements made by witnesses of the party on whom the demand is made and the result of the investigations of the party on whom the demand is made. Although our practice has become more liberalized and undoubtedly will be more liberalized as years go on so as to carry out the thought that the trial of lawsuits is not a game of chance but is a seeking after the truth and merits of the action, this court is of the opinion that we have not reached the point and that it would be unwise to establish the practice, of compelling each side to divulge all of its evidence to the other prior to trial."

Truly, the time has not come to compel each side to divulge all of its evidence to the other prior to trial, but the time has come to take the first step toward simplifying personal injury cases and those cases where myriads of doctors, *disguised* as experts, take the stand to testify as to the physical or mental condition of one of the parties. We are not aware that hardship is wrought upon defendant in requiring him to submit to plaintiff a copy of the report of the doctor, when plaintiff himself is the subject matter of the report, and by submitting to the examination may in a measure weaken his own case. Our conclusion on this point is that in the interests of more substantial justice and

fairness to both parties, a copy of the report of the physical examination should be delivered to plaintiff.

The propriety of the admission of the testimony of Owen Carr is questioned by assignments of error number 19 and 20. Mr. Carr is an assistant building inspector of the City of Miami and has been since 1935. He had "grown up in the construction business," and had been actively engaged in this business for himself for about twenty-two years. Mr. Carr was familiar with the type of construction being used by defendant and with the pans, or concrete forms, from which plaintiff fell. Coupled with his experience, the witness had visited the scene of the accident very shortly after its occurrence and had made a minute inspection of the materials involved. Mr. Carr was questioned as to the cause of the accident, based on his observations and experience.

In 22 Corpus Juris 632, Section 728, we find the following:

"A witness, of special knowledge or skill on a subject outside of the ordinary realm of human experience, may be permitted to state his inference, from facts observed by him, as to matters connected with his specialty, not only because of the frequent difficulty of communicating the facts to the jury but also because, even if the facts could be fully laid before them, they would not possess the special knowledge or training necessary to coordinate and weigh the facts so as to draw the correct and proper inference therefrom. Such witness is frequently termed an expert, but this is inaccurate, for the skilled witness testifies as to the result of his own observation, and occupies the same position as any other witness except that within certain lines he possesses a superior knowledge which enables him to understand, as one without such special knowledge could not, what he has

observed, although he may also be competent to testify as an expert on hypothetically stated facts."

And again on page 645, Section 739 of 22 C. J., it is stated: "A witness experienced in a building trade, and who is shown to have had sufficient opportunity for observation, and to be adequately qualified to form a judgment as to the matter of which he undertakes to speak, may testify as to his inferences or· judgment in his particular department. * * *"

It is within the province of the trial court to determine whether or not a witness offered as a skilled witness has such qualifications and is possessed of sufficient knowledge through experience and observation to warrant his testifying as a skilled witness, and the decision of the trial court is conclusive upon the parties until it appears from the transcript to have been erroneous or to have been founded upon error in law.   A. C. L. Ry. Co. v. Crosby, 53 Fla. 400, 43 So. 318; Schley v. State, 48 Fla. 53, 37 So. 518; Davis v. State, 44 Fla. 32, 32 So. 822.   Mr. Carr was sufficiently qualified to testify as a skilled witness and his testimony was properly admitted.

By appropriate assignments of error defendant questions the admission of the testimony of Dr. E. W. Cullipher, whose specialty is orthopedic surgery, and Dr. Paul Kells, who specializes in nervous diseases.   It is urged that the testimony of these two physicians is based for the most part on self-serving declarations made by plaintiff himself at the examination.

It is elementary that almost any examination made by a physician relative to internal disorders directly or proximately resulting from previous injuries must be based in part on the case history of the patient.   In both instances here, the doctors were given substantially the same history

of the patient's injuries. .Each then proceeded to make his own examination. The conclusions stated at the trial were, in each instance, based on the findings of the physicians in their actual examinations of plaintiff. Dr. Cullipher used x-ray photographs in his examination, and stated that "My findings were * * *," and spoke of a number of disorders. Dr. Kells' testimony was substantially the same as that of Dr. Cullipher, and in the same form. It was not error to admit the testimony of these two physicians.

Certain testimony of plaintiff himself on redirect examination is alleged to be hearsay, and that the trial court erred in admitting such testimony. Quoting from the transcript, that testimony is as follows:

"Q. Do you mean to say you are positive the spreaders were put in these pans at the place you fell, or are you not?

"Ans. I am positive they were there from the statements of other people. * * *

"The Court: Is your testimony based entirely on the statements of other people?

"The Witness: No, sir.

"The Court: Do you have any independent recollection they were in?

"The Witness: In the inspection we make it would be hard to make the statement you had noticed every little detail. That would be almost impossible.

"The Court: Even so, I want to know if you have a distinct recollection they were in?

"The Witness: The only way I could answer that would be that at the time I was underneath there, calling my personal attention to it, everything was intact in that particular position; it was all as it should be.

"The Court: You made a deduction they were in, but

do you have a distinct recollection they were in, or not. That is what we want you to tell us.

The Witness: I am reasonably positive they were there.

"The Court: He didn't ask you that. Do you have at this time a present recollection as to whether they were in or not?

"The Witness: I would say yes, if I was pressed to say that.

"Q. (By Mr. Blackwell): You would say that is based on what you saw from the first floor. Is that correct?

"Ans. That is gathered from the presumption of my previous inspection underneath and my outlining of the way things stood, I would say yes."

To support defendant in his contention, Jones on Evidence in Civil Cases (4th), Vol. 1, page 451, is cited. This passage deals with statements made by plaintiff previous to the trial, but which are not attempted to be introduced into evidence. It has no application to the question before us. The testimony of plaintiff was properly admitted.

It is urged by defendant Fred Howland, Inc., that Morris was a licensee on the premises and that consequently it was under no duty to protect Morris from injury, being required only to refrain from wilfully and wantonly injuring him. Defendant cites many cases dealing with firemen and policemen, where the courts have almost uniformly held that such officers are licensees. The theory—and it is a correct one—upon which such holdings are based is that of overwhelming necessity, and no duty rests upon the property owner to protect such licensees from injury.

A building inspector, while his presence is in part a necessity, is present also by virtue of an implied contractual relationship with the city, wherein the city grants a permit to build, provided the city, through its authorized agents,

is allowed to make detailed inspections of the component parts of the building as they are assembled. The inspector is on the premises for a purpose connected with the business in which the owner or occupant is engaged or which he permits to be conducted on the premises, and there is a mutuality of interest in the subject to which the inspector's presence relates. In this respect he is akin to a government inspector in a privately-owned meat packing plant. Pauckner v. Wakem, 231 Ill. 276, 83 N. E. 202, 14 L. R. A. (N. S.) 1118; Milauskis v. Terminal Ry. Ass'n., 286 Ill. 547, 122 N. E. 78; Boneau v. Swift & Co., Mo. App., 66 S. W. (2d) 172.

"We have found no support for any rule," says Mr. Thompson in speaking of the right of mere licensees, "which would protect those who go where they are not invited, but merely with express or tacit permission from curiosity, or motives of private convenience, in no way connected with business or their relations with the occupant." I Thompson on Negligence 303. Here, the least that can be said of Morris is that he was very closely connected with the business of the occupant.

In Middleton v. P. Sanford Ross, Inc., 213 Fed. 6, it is said: "Invitation of the owner or occupant is implied by law where the person goes on the premises for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty. Shearman & Redfield on Negligence, Sections 968-972; West India & P. S. S. Co. v. Wiebel, 113 Fed. 169, 51 C. C. A. 116. And the owner or person in possession of the premises owes it as a duty to those who come on the premises by invitation, express or implied, to exercise reasonable or ordinary care to keep and maintain his premises in safe condition."

Taking the circumstances as a whole, we must conclude that Morris was a business invitee on the premises, and the rules of protection from injury applicable to invitees are controlling.

In Southern Express Co. v. Williamson, 66 Fla. 286, 63 So. 433, L. R. A. 1916C 1208, the Court, in setting out the duties of a property owner to an invitee, said: "Where a person or corporation invites a member of the public into his or its place of business, he or it owes such person a duty with respect to his safety which may vary with the circumstances of each case. * * * In any event there is a duty to have the place of business in a reasonably safe condition. And the care required depends upon the circumstances of each case." See also 20 R. C. L., page 55.

It is suggested that even though Morris be an invitee, he had put himself in a place not intended for the reception of visitors, and where visitors were not expected or invited to go, namely, the forms, or pans, of the mezzanine floor. Morris, on the witness stand, was asked: "Was any other means or way provided for by either the Walgreen Company or Fred Howland for you to walk on except those pans in your electrical inspection?" To which he replied: "No, sir." Morris was later asked: "Could you make those inspections without walking on the pan?" and he replied: "That it would be almost impossible—it would be impossible." This testimony was not refuted, and further testimony showed that plaintiff was within a very few feet of a defective electrical conduit that he had just shown to a workman.

The record further shows that two employees, one the general superintendent employed by Walgreen, and the other the employee of the electrical sub-contractor in charge of that work, were standing on the pan when Morris went to

the mezzanine floor, and suggested that he "come on in." Morris was in a place where it should have been anticipated that he might be, and we cannot find merit in defendant's contention.

Defendant also submits this question for decision: "Is it the duty and function of a trial judge to outline the issues made by the pleadings or is it permissible for him to disregard material issues raised by valid pleas duly interposed?"

Section 4365 (2698) C. G. L. provides that: "If either of the parties, or their attorneys, present to the judge instructions in writing on any point of law arising on the trial, it shall be the duty of the judge to declare in writing to the jury his ruling thereupon as presented, and pronounce the same to the jury as given or refused."

In Marlowe v. State, 139 Fla. 307, 190 So. 602, Mr. Justice Buford, speaking for the Court, said:

"If charges are not erroneous, but merely incomplete, it is the duty of the party objecting to submit appropriate charges and request them to be given to the jury to cover points alleged to be not sufficiently covered in the charges which the court has undertaken to give. See Taylor v. State, 98 Fla. 881, 124 So. 445; Long v. State, 11 Fla. 295; Blige v. State, 20 Fla. 742, 51 Am. Rep. 628."

In Milton v. State, 140 Fla. 617, 192 So. 219, wherein the trial court failed to give an instruction on a certain point in the case, but had not been requested to give charges on that point, this Court said:

"This Court has said in the past, and now repeats it, that it is the duty of the trial court to instruct the jury on all the law applicable to the facts proven in a case; but the Court has not said in the Hicks case (25 Fla. 535, 6 So. 441) or in any other case, that, if the court fails or omits to charge

on the law applicable to some phase of the case, the defendant can avail himself of this omission without first requesting the court to charge on the point or points desired to be submitted to the jury. The reverse of this proposition is the settled practice of this State."

It has long been the law of this State that one who wishes to avail himself of the trial court's omission to charge the jury on any point must ask the court to give the desired instruction, and otherwise will not be permitted to assign the court's omission to so instruct as error. Adelhelm v. Dougherty, 129 Fla. 680, 176 So. 775; Silver Lake Estates Corp. v. Merrill, 120 Fla. 467, 163 So. 7; Peninsular Naval Stores Co. v. Mathers, 96 Fla. 620, 119 So. 333; City of Key West v. Baldwin, 69 Fla. 136, 67 So. 808.

The record before us shows nothing more than a general exception by defendant to the charge given by the trial judge. No requests for instructions on the part of defendant, and their denial by the trial judge, appears.

We are unable to find wherein error has been committed, and the final judgment of the circuit court is accordingly—

Affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

THOMAS, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice BUFORD not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.