267 So.2d 662 (1972)
Evelyn SHEPPARD and Raymond Sheppard, Appellants,
v.
REVLON, INC., Appellee.
No. 71-1076.
District Court of Appeal of Florida, Third District.
October 10, 1972.
Rehearing Denied November 7, 1972.
Schwartz & Schwartz, Miami, for appellants.
Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, and Robert K. Tucker, Miami, for appellee.
Before BARKDULL, C.J., and PEARSON and HENDRY, JJ.
*663 HENDRY, Judge.
Appellant-plaintiffs, Mr. and Mrs. Raymond Sheppard, seek review of a post-trial order granting appellee-defendant, Revlon's motion for directed verdict and vacating a final judgment theretofore entered. Rule 1.480(b), Florida Rules of Civil Procedure, 30 F.S.A. The effect of the order appealed was to set aside a final judgment entered upon a jury verdict in the amount of $2,500.00 for the wife's claim and $500.00 for the husband's claim in their favor and to grant the defendant's motion for directed verdict at the close of the plaintiffs' case.
This was an action to recover damages for injuries to her left eye which proceeded upon the theory of negligence and breach of express and implied warranties. See generally: Harris v. Belton, 258 Cal. App.2d 595, 65 Cal. Rptr. 808 (1st Dist., 1968).
Mrs. Sheppard obtained a jar of "Ultima II Translucent Wrinkle Creme", a wrinkle remover manufactured by Revlon, in December, 1968, by purchasing $5.00 worth of additional cosmetic products.
On December 25, 1968, she opened the jar for the first time and applied it to her face at bedtime about 9:30 or 10:00 P.M. The jar, which was introduced into evidence, contained no warning against use near the eyes. She awoke with a pain in her left eye at roughly 5:00 o'clock the following morning. She was taken to the emergency room of a hospital. Mrs. Sheppard testified that at the hospital her eye was swabbed and that cream was removed from her eye, as she could see it on the swab. Her husband's testimony confirmed this.
Hospital records indicate that she was admitted to the Osteopathic General Hospital, North Miami Beach, Florida, at 9:50 A.M. She was referred to an eye specialist who treated her that day and for a period of time thereafter. He also testified that this type of injury is extremely painful.
On direct examination this treating eye specialist testified that at the time of the first treatment his diagnosis was a "massive keratopathy of the left eye." His testimony as to causation, in light of reasonable medical probability, was that the injury was causally related to the presence of the wrinkle cream in the eye, based upon the history related to him by Mrs. Sheppard.
The appellee points out that the specialist's diagnosis did not provide a conclusive causative link between the cream and the injury. For example, on cross-examination he was asked to explain the term "trauma" and responded that such an injury could be caused by "force or chemicals or anything that would do injury to the tissue" and that traumatic keratitis could be caused by many things. The doctor further testified that he did not find any foreign bodies in her eye at the time he examined her, and did not run any tests on the wrinkle cream, which she brought with her, that allegedly got into her eye.
An expert chemical witness, who was employed by Revlon, testified that not only was the wrinkle cream not harmful but was absorbed within minutes. A sample of the cream had been forwarded for analysis and no foreign matter or adulteration was detected; it was also compared with a sample batch retained by Revlon and no deviation was noted. In passing, we note that the appellee did not allege that the cream was adulterated.
The instant products liability case raises three issues meriting discussion. The first is the scope of our review of an order granting a motion for judgment in accordance with a directed verdict; next, whether these facts show that a sale occurred; and lastly, whether the evidence sufficiently established a causal connection between use of the cream and the eye injury.
The principles governing appellate review of the granting of a directed verdict after the entry of a jury verdict are now well established, Cash v. Gates, Fla.App. *664 1963, 151 So.2d 838; Panoz v. Gulf and Bay Corporation of Sarasota, Fla.App. 1968, 208 So.2d 297, and need not be repeated here.
The appellants contend that the transaction was not a sale, but was a gift made in connection with the sale of $5.00 or more of other Revlon products. We reject this argument.
A sale is defined in § 672.106(1), Fla. Stat., F.S.A., § 2-106 of the Uniform Commercial Code, as follows:
"672.106 Definitions: ...
"(1) ... A `sale' consists in the passing of title from the seller to the buyer for a price. (§ 672.2-401)... ."
According to the Official Comment to Code § 2-304, which is § 672.304, Fla. Stat., F.S.A., the "price of goods is payable in something other than money." Mrs. Sheppard obtained the merchandise as a result of performing an act required, to-wit: purchasing $5.00, or more, of Revlon cosmetics at one itme. See also: § 671.201(11) and (44)(d), Fla. Stat., F.S.A.
Assuming, arguendo, that this transaction was not a sale, nevertheless, warranty liability may be imposed. Such liability is not intended to be limited only to a sales contract or only to the direct parties, as an Official Comment to § 2-313 of the Code, § 672.313, Fla. Stat., F.S.A. states:
"2. Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances... . Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise."
The instant transaction, which involves the cosmetics manufacturer and buyer, therefore justifies application of potential warranty liability, so that Wentzel v. Berliner, Fla.App. 1967, 204 So.2d 905, is distinguishable.
The proximate cause issue may be phrased as follows: Whether the jury, after receiving the testimony and evidence presented at trial, could reasonably have found or inferred that the defendant's cream was the proximate cause of plaintiff's injury. Counsel have not cited any cases dealing specifically with this or any other wrinkle cream. Independent research has also failed to unearth any. First, there was no explanation as to how the matter went into her eye. Mrs. Sheppard testified that she did not place the cream in her eye when she applied it to her face. She also testified that she examined her pillow on awakening and did not find any cream on it.
Secondly, there was conflict in the testimony as to whether the cream was actually removed as the husband and wife testified. The testimony of the treating physician was that he observed no wrinkle cream or any other foreign object in her eye when he examined her. From his examination of her eyes he was also unable to determine whether keratitis was due to chemical action or not. The chemist testified that this cream is easily absorbed into the skin and particularly so when it is rubbed into the skin.
Thirdly, the plaintiff's treating physician could not ascribe the traumatic injury to the cream apart from Mrs. Sheppard's medical history. Next, there were significant time lapses involved from the application to the pain, and from the pain to the treatment at the hospital. Lastly, the expert testimony was undisputed that there was no adulteration or foreign substance present in the wrinkle cream and there was *665 no evidence adduced as to the pH of the cream, which would indicate its acidity or alkalinity.
In conclusion, we have reviewed the evidence and inferences to be derived therefrom in a light most favorable to the plaintiffs and have considered the briefs and arguments of counsel. We therefore hold that the instant transaction constituted a sale and is subject to the implied warranties of merchantability or of ordinary use, § 672.314, Fla. Stat., F.S.A., under the Florida version of the Uniform Commercial Code. We further hold that the plaintiffs failed to adduce sufficient proof on the issue of proximate causation. The trial court was correct in entering a judgment in accordance with the defendant manufacturer's motion to have judgment entered in accordance with its motion for a directed verdict, the earlier verdict for plaintiffs notwithstanding. The judgment appealed is affirmed.
Affirmed.