122 So.2d 481 (1960)
James Albert McCLOSKEY, Appellant,
v.
LOUISVILLE & NASHVILLE RAILROAD COMPANY, a Corporation, Appellee.
No. C-16.
District Court of Appeal of Florida. First District.
August 4, 1960.
*482 Coe & Coe, Pensacola, for appellant.
Yonge, Beggs & Lane, Pensacola, for appellee.
STURGIS, Judge.
This is an appeal from a judgment for the defendant (appellee) railroad entered by the trial court pursuant to defendant's motion for judgment notwithstanding a jury verdict for the plaintiff (appellant) employee in an action under the Federal Employers' Liability Act (Title 45 U.S.C.A. Ch. 2, § 51 et seq.). The judgment is set aside and this cause remanded for further action consistent herewith.
The material facts are not in dispute. For approximately eighteen months prior to the accident resulting in the injury for which plaintiff seeks redress he had been employed by defendant as general foreman of its wharf in the city of Pensacola. As part of his duties he was charged with keeping "shipshape" a warehouse having an upper floor onto which nitrate and other granular matter was unloaded from ships and held there as long as desired. Transfer of such substances to the first floor, there to be sacked or otherwise made available for reshipment, was accomplished by means of slots in the upper floor. The typical slots regularly used for such purpose each had a dimension of approximately 11" x 7", were located approximately twelve feet apart, and were installed at right angles to 3" x 12" joists laid 10" on centers. Detachable boards were made to fit therein and rested on the joists so as to retain the unloaded substances until ready for transfer. These typical slots were not large enough to permit passage of plaintiff's body.
At the place of the accident, however, a different condition existed: At that point was located a slot 31 feet in length at one end of which several joists had been sawed out so as to create a hole measuring 41" x 15", and it is through this non-typical hole in the non-typical slot that plaintiff fell while inspecting the warehouse for rain leaks. The cover for this entire slot, including the mentioned 41" x 15" sector, was a board 7' 11" long by 14" wide. Patently, this board was inadequate to cover *483 either the 41" x 15" hole or the full length of the slot. There was evidence from which the jury was entitled to conclude that this slot had not been used for many years and plaintiff testified he was not aware of its existence. The accident occurred when the plaintiff, while making the inspection for leaks, stepped on this board at a point where, according to his testimony, it "appeared to be in the floor, and it threw me and I fell right down through this hole about twenty-two feet * * * to the first floor." He further testified that the light was sufficient for him to see, that the board "looked like it was all right, a part of the flooring," and that it fell through the hole with him. Plaintiff's testimony affords a basis from which the jury might have reasonably inferred, as its verdict indicates it did, that under all the facts and circumstances plaintiff's fall was occasioned by defendant's failure to so fix and maintain the board in place as to prevent it from upending when the weight of plaintiff's body came to rest thereon.
Such a finding on the part of the jury is compatible with the acts of negligence charged to the defendant and urgently insisted upon by plaintiff as being sufficiently established to meet the burden of proof resting on him in this action under the Federal Employers' Liability Act. The defendant with equal fervor contends, first, that plaintiff's negligence alone produced the injury, and secondly, that assuming arguendo the defendant was negligent, the evidence as a whole does not support with reason a conclusion that such negligence played any part in plaintiff's injuries.
The order appealed finds, inter alia:
"(a) That the evidence wholly fails to establish that any negligence complained of by the Plaintiff was a proximate cause of his injuries;
"(b) That the evidence wholly fails to establish that any act or omission of the Defendant or any of its agents or servants was a proximate cause of Plaintiff's injuries." (Emphasis supplied.)
It is apparent that the finding of absence of "proximate cause" rather than absence of a causal connection between the defendant's action or non-action and plaintiff's injury, is the criterion that controlled the trial judge in entering the judgment non obstante veredicto.
At this point we wish to note, in fairness and deference to the learned trial judge, that when that judgment was entered the bench and bar did not have the benefit  using that term in a strictly technical sense  of the more recent decisions of this and other Florida courts which, in conformity with controlling decisions of Federal courts, substantially modify the classic concept of proximate cause in tort actions, so as to render it inapplicable to actions for personal injuries suffered by one coming within the purview of the Federal Employers' Liability Act. Substituted therefor is the notion of "causal connection" between the injury and the negligent condition or act producing it. And while it is true, as appellee argues, that these decisions do not walk the last mile of boldly holding the employer to be an insurer, and that negligence continues to be given lip service as the lode star forming the basis of liability under the Act, the effect of the Federal decisions interpreting the Act is to render these considerations so nebulous as, for all practical purposes, to stretch to microscopic proportions the thread upon which appellee would hang its hat. Whatever the philosophy of the writer or other members of this court may be as to the soundness of these precedents, we are bound by them and the remedy, if any is to be had or desirable, lies with the legislative rather than the judicial branch of government.
In the leading case of Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, a laborer on a section gang was charged with the dual duty of burning off weeds from the right-of-way *484 with a hand torch and to watching passing trains for hot boxes. While burning weeds a train passed. He stopped that work to watch the axle journals for hot boxes and while so doing the unwatched fire from his weed-burning activity enveloped him. He was injured when, blinded by the smoke, he ran from the fire and fell into a culvert. The trial court ruled that no causal connection exists unless from the evidence the jury can say that absent defendant's negligence the injury would not have occurred. In rejecting that rule in this type of case the United States Supreme Court held that there were probative facts from which the jury could find that the employer was or should have been aware of conditions creating a likelihood that the employee, in performing the duties required of him, might suffer just such an injury as occurred; that at best, uncertainty as to the fact of negligence arose from the employee's testimony, and in that circumstance the jury rather than the court was the tribunal to determine the fact. Construing the Act the court said:
"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to the other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal, and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities. The statute expressly imposes liability upon the employer to pay damages for injury or death due `in whole or in part' to its negligence." (Emphasis added.)
In Gaymon v. Quinn Menhaden Fisheries of Texas, Inc., Fla.App. 1960, 118 So.2d 42, 44, a case arising under the Jones Act (46 U.S.C.A. § 688), this court recognized, in line with Federal decisions, that the rule governing evidence, as applied under the Jones Act, is identical with the rule applicable to cases under the Federal Employers' Liability Act. In that case Judge Fitzpatrick, speaking for this court, said:
"The general rules concerning quantum of proof in wrongful death actions which are recognized by Florida Jurisprudence do not apply and have no bearing on cases brought under the Jones Act or the Federal Employers' Liability Act. * * *
* * * * * *
"It therefore appears that under the Jones Act * * * and the Federal Employers' Liability Act * * * it is not necessary to show that employer negligence was the proximate cause of the injury or death complained of but that it is sufficient to establish a jury question by simply showing some negligence on the part of the employer coupled by direct or circumstantial evidence to the injury or death of an employee."
The same rule necessarily applies to claims for injuries that do not result in death. See Fribley v. Bebe, Inc., Fla.App. 1960, 121 So.2d 446.
Defendant also contends that it was appellant's responsibility as general superintendent of the wharf to eliminate or cover the hole through which he fell. Plaintiff responds by pointing out that the hole through which he fell had been there for twenty years, that it had long been in disuse, and that he had been wharf superintendent for some eighteen months only. Plaintiff also insists that assuming, per *485 argumenti, that he should have known of its existence and was therefore negligent in permitting it to remain, the jury was nevertheless entitled to find that the railroad was contributorily negligent in maintaining it in such condition for that long period of time and in turning the premises over to him in such condition without making him acquainted therewith. We agree that it was the province of the jury to determine, under all the facts and circumstances, whether defendant's acts constituted negligence in any part contributing to the injury and, if found to exist, that defendant's contributory negligence would not bar recovery under the Act.
We deem it unnecessary to further discuss the facts upon which we base our conclusion that under applicable law the evidence was sufficient to require the submission of this case to the jury. Suffice it to say that having so concluded, the trial court erred in entering judgment n.o.v. for the defendant railroad and, accordingly, the judgment must be and it is set aside.
The appellee also seeks a ruling, contingent on reversal of the judgment appealed, as has now come to pass, as to whether upon the remand of the cause to the trial court appellant will be precluded from being heard there upon its undisposed of alternative motion for a new trial.
Rule 2.7(c) of the Florida Rules of Civil Procedure, 31 F.S.A. allows a motion for new trial to be joined with a motion for a judgment notwithstanding the verdict, or a new trial to be prayed for in the alternative. This rule is virtually identical with Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., from which it was adapted. In construing the Federal rule, the Supreme Court of the United States in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147, held that where the trial court had entered judgment n.o.v. but had not ruled upon an alternative motion for a new trial, then upon reversing the judgment the appellate court should remand the cause to the district court to hear and rule upon the motion for a new trial. This procedure seems to accord fully with reason and justice. A comprehensive discussion of the reasons supporting the Montgomery Ward case is found in Marsh v. Illinois Central R. Co., 5 Cir., 175 F.2d 498. See, also, our opinion in the case of King v. Jacksonville Coach Co., 122 So.2d 480, filed July 19, 1960 (since this case became final prior to publication, this is no longer necessary).
By order of January 21, 1950, the Supreme Court of Florida approved and adopted forms of summons at law and in chancery. The same order by reference approved and adopted the forms promulgated by the Supreme Court of the United States under Rule 84 of the Federal Rules of Civil Procedure, insofar as applicable, for use in the trial courts of Florida. Unfortunately these forms have not been included in the compilation of the general laws as have the rules proper. Hence, although highly persuasive in pointing the way to the application of the rules, they are not readily available to the practitioner or the courts. These forms may be found in Volumes 30 and 31, F.S.A., in conjunction with the applicable rule. There, in connection with Rule 2.7, 1954 Florida Rules of Civil Procedure, is found Form 4 for "Motion for Judgment in Accordance with Motion for Directed Verdict or for New Trial," which motions are permitted to be joined under Rule 2.7(c), F.R.C.P.; and there also is found Form 6 for an "Order Granting Motion for Judgment Notwithstanding Verdict and Granting New Trial Conditioned Upon Reversal of Judgment." The salutory purpose of this procedure is to expedite the cause by permitting the ruling on the motion for new trial to be reviewed, in the event of appeal, in conjunction with a review of the ruling granting judgment n.o.v. and so that if the judgment n.o.v. is reversed, the ruling on the motion for a new trial may not form the predicate for an assignment of error upon a subsequent appeal. Since the trial *486 court has not disposed of defendant's motion for new trial, our reversal of the judgment n.o.v. leaves the door ajar for an appeal to be taken, following entry of final judgment pursuant to proceedings on the remand, to review whatever order the trial court may enter on the pending motion for new trial. Consequently, while this court is only saying "Good Bye," it is not necessarily saying "Forever, fare thee well."
The judgment appealed must be and it is reversed and this cause is remanded for further action.
Reversed and remanded.
WIGGINTON, C.J., and SEBRING, HAROLD L., Associate Judge, concur.