181 So.2d 212 (1965)
Viola Gikas SMITH, Appellant,
v.
PENINSULAR INSURANCE COMPANY, Appellee.
No. G-217.
District Court of Appeal of Florida. First District.
November 30, 1965.
Rehearing Denied January 14, 1966.
*213 Coe & Coe, Pensacola, for appellant.
Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellee.
CARROLL, DONALD K., Judge.
The plaintiff in an action on a fire insurance policy has appealed from a judgment non obstante veredicto entered by the Circuit Court for Escambia County in favor of the defendant insurer.
The basic question presented for our determination in this appeal is whether there was sufficient substantial evidence adduced at the trial from which the jury could have lawfully concluded that the plaintiff had not materially increased the fire hazard between the date on which the policy was issued and the time of the fire which burned the plaintiff's house that was covered by the fire insurance policy issued by the defendant-appellee.
This question arose out of the following facts established by the evidence before the jury:
On June 14, 1963, the defendant issued a policy insuring against loss by fire to the amount of $10,000 the plaintiff's one-story family frame and concrete block building occupied as a dwelling and a day nursery, situated in West Pensacola in the said county. This policy was in full force and effect on July 5, 1964, when the said property was damaged and partly destroyed by fire.
The pivotal provision of the policy involved in this case provides that the defendant, the insurer, shall not be liable for loss occurring "while the hazard is increased by any means within the control or knowledge of the insured. * * *" The only issue submitted to the jury at the trial was whether there had been a "material and substantial *214 change" in the occupancy of the building resulting in a "material or substantial increase in hazard" so that the insurer would not be liable on account of the above-quoted provision of the policy. This issue was raised in an affirmative defense in the defendant's answer to the plaintiff's complaint, the defendant alleging therein that "between the time of the issuance of its policy and the fire involved herein there was a change in the character of the occupancy of the premises from a dwelling and day nursery to a used furniture and clothing store; that such change materially increased the hazard from fire; that plaintiff failed to notify defendant of such change and that the policy therefore was not in effect at the time of the fire involved herein."
On the issue of the change of occupancy between the time of the issuance of the policy (June 14, 1963) and the time of the fire (July 5, 1964) the undisputed evidence at the trial established the following facts:
When the said policy was issued, the front part of the plaintiff's building was occupied as a dwelling and the back part as a day nursery. The property covered by the said policy is described therein as "the one story one family frame and concrete block building occupied as dwelling and a Day Nursery" situated at a certain address in the City of Pensacola, in Escambia County. The back part of the plaintiff's building continued to be occupied as a day nursery or kindergarten until June 18, 1964 (17 days before the fire), when the husband of the tenant of that part died and the tenant turned in her key to the plaintiff and moved out. The plaintiff testified that at that time, when the tenant turned in her key and moved out, she did not intend to do anything with the back part of her building, but then an idea struck her that perhaps in a few months hence she would "go into the procedure" of disposing of some furniture she had accumulated as well as some clothing she had to store. The plaintiff then moved three or four roomsful of furniture and a lot of clothing into what was formerly the day nursery, but without removing the kindergarten equipment therefrom. When the said fire occurred on July 5, 1964, however, the plaintiff had not opened "the place for business" and had not obtained a license to do business there. The fire in question originated in the front or dwelling part of the plaintiff's house and burned that part, but only slightly damaged the rear part formerly occupied as a day nursery.
The evidence at the trial showed, we think, that there had been a "change in occupancy" of the insured premises between the time when the policy was issued and the date of the fire. It was also clear from the evidence that the plaintiff failed to notify the defendant concerning this change prior to the fire. Nevertheless, the defendant was not absolved of its liability under the terms of the above-quoted provision of its policy unless the evidence further established that the fire hazard was increased by such change of occupancy.
The trial court properly charged the jury that the sole issue for it to determine was "whether or not there has been a material and substantial change in occupancy of the premises, or of the building. * * * You are concerned only with the determination of whether or not there has been such material or substantial increase in hazard as a result of the change in occupancy of the premises, if, in fact, you find that there has been a change of occupancy. In this case, then, the burden is upon the defendant insurance company to prove by a preponderance or the greater weight of the evidence its claim of increase in hazard, due to the change in occupancy." With regard to the materiality of such increase in hazard, the court correctly charged the jury as follows:
"The Court charges you that not every trivial increase of risk by some act upon the part of the owner, avoids an insurance policy, but such increase or hazard must be substantial, one which the insurance company could not *215 reasonably be presumed to have contracted to assume at the time the policy was issued. You will find from the evidence whether or not such increase of hazard occurred."
As we view the evidence adduced at the trial, we think that the court was eminently correct in thus submitting to the jury the issue whether the change of occupancy effected a material and substantial increase in hazard, for the evidence before the jury was conflicting as to that issue (if not overwhelmingly against such increase) and hence it was a question of fact for the jury's determination.
As to this issue of the increase in hazard, the defendant produced two witnesses at the trial, one being an employee of the Florida Inspection and Rating Bureau, which is maintained by insurance companies, and the other witness being the home office manager of the defendant. These two witnesses testified that the rate for day nurseries was much less than the rate for second hand clothing or furniture stores, and that this greater rate reflected the greater hazard statistically arrived at. On cross-examination, however, the first witness conceded that, if the owner had two vacant rooms in his house and moved in there his extra furniture and some old clothing, that would not increase the rate "because you don't have it for sale" and would not change the hazard. The second witness made a similar concession that under such circumstances the rate would not increase. It is true, however, that these two witnesses on later examination and cross-examination gave testimony both consistent and inconsistent with their foregoing testimony concerning the increase in hazard, so the question of such increase was peculiarly a question of fact for the determination of the jury as to whether the evidence established that a material and substantial increase in hazard had taken place before the fire within the contemplation of the above-quoted provision of the fire insurance policy.
Since the fact was undisputed in the evidence at the trial that at the time of the fire the plaintiff had not opened a furniture or clothing store or otherwise opened a place of business in her house, the jury could have reasonably concluded from the testimony of the defendant's said two witnesses that the plaintiff's act of moving her said furniture and clothing into the day nursery rooms had not materially or substantially increased the hazard insured against, as contemplated by the above-quoted provision of the defendant's fire insurance policy. Evidently the jurors so concluded, for they brought in a verdict for the plaintiff and assessed her damages at $3,908.62, with interest from date of suit.
At the trial, after the presentation of their evidence by both parties, the defendant moved for a directed verdict in its favor on the ground that "the evidence shows that the change in occupancy which occurred prior to and continued until the time of the fire increased the hazard, and that it was by means within the control or knowledge of the insured, and therefore the insurance was suspended at the time of the fire." After the argument of counsel on this motion in the absence of the jury, the trial court announced that it "will withhold ruling on the motion for the time being." The court made no ruling upon the said motion until a month after the trial, when it entered the judgment non obstante veredicto, appealed from herein.
After the jury brought in the verdict for the plaintiff and the trial ended, the defendant timely filed a motion for a new trial and a motion for a judgment notwithstanding the verdict to set aside the jury verdict and any judgment entered thereon. In the latter motion the defendant moved the court to enter a judgment in its favor "in accordance with the defendant's motion for directed verdict made during the trial which was taken under advisement by the Court."
The defendant's said motion for a judgment notwithstanding the verdict was filed, and the judgment thereon was entered, pursuant *216 to the provisions of subdivision (b) of Rule 2.7 of the Florida Rules of Civil Procedure, 31 F.S.A., reading as follows:
"Reservation of Decision on Motion. Whenever a motion for a directed verdict made at the close of all of the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury at such time subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with the motion for a directed verdict."
It appears obvious that the validity of a judgment non obstante veredicto entered in accordance with the just-quoted provision should be tested by the rules applicable to motions for directed verdicts, for such a judgment is essentially an order granting a motion for a directed verdict made during the trial, except that the judgment is entered after the jury has returned its verdict.
One of such rules is that recognized by the District Court of Appeal, Second District of Florida, in Deese v. White Belt Dairy Farms, Inc., 160 So.2d 543 (1964), which court held therein that the movant for a judgment notwithstanding verdict admits all material facts as attested by his adversary and also admits all inferences of fact that reasonably might be drawn from the evidence as a whole. Applying this rule, our sister court held in that case, which involved a personal injury action, that the question of negligence was a question of fact for the jury's determination, and hence it was error to grant the defendants' motion for a judgment notwithstanding a verdict for the plaintiff.
We quote with approval the following statement of the principles involved from the opinion of our sister court in Deese v. White Belt Dairy Farms, Inc., supra:
"Motions for judgment notwithstanding verdict, like motions for directed verdict, should be resolved with extreme caution since the granting thereof holds that one side of the case is essentially devoid of probative evidence. Cf. Ely v. Atlantic Coast Line R.R. Co., Fla.App. 1962, 138 So.2d 521, 524 and cases there cited. The movant admits all material facts as attested by his adversary and also admits all inferences of fact favorable to the adversary that reasonably might be drawn from the evidence as a whole. Cash v. Gates, Fla.App. 1963, 151 So.2d 838, 840. If there is room for difference among reasonable men as to the existence of a material fact sought to be established, or as to a material inference which reasonably might be drawn from established facts, the case should be submitted to the jury. e.g. Budgen v. Brady, Fla.App. 1958, 103 So.2d 672, 674. On the instant record we cannot agree that a jury could not, as a matter of law, reach a valid verdict for the plaintiff. Accordingly that portion of the order granting judgment notwithstanding the verdict is reversed."
Applying the same rule to the evidence before the jury at the trial in the instant case, we think that there was sufficient evidence from which the jury could reasonably conclude that the change in the occupancy of the premises prior to the fire did not involve a material or substantial increase in the hazard insured against, and hence that the defendant was liable under the fire policy it had issued to the plaintiff. The issue as to whether there had been such a material or substantial increase in hazard that the defendant was relieved of liability *217 under the policy provision quoted near the beginning of this opinion, was a question of fact for the determination of the jury.
The rule seems to be generally recognized that the increase in hazard referred to in policy provisions like that in the policy before us, means such a "material and substantial" increase in the hazard that the insurer could not reasonably be presumed to have contracted to assume it. This general rule is stated in Couch on Insurance, 2nd Ed., Vol. 8, Sec. 37:695, as follows:
"Necessity of substantial increase or change. A provision avoiding insurance because of an alteration in the situation or circumstances which would increase the risk contemplates such alteration as would materially and substantially enhance the hazard, as viewed by a person of ordinary intelligence, care, and diligence. A mere trifling increase will not avoid the policy; rather, there must be a substantial and material increase, such as the insurer, in view of the terms of the policy, could not reasonably be presumed to have contracted to assume."
The general rule also seems to be established that the question of the increase in hazard is a question of fact for the determination of the jury. This rule is set forth in Couch on Insurance, 2nd Ed., Vol. 8, Sec. 37:721, as follows:
"Questions of fact. Increase of risk or hazard is a question for the jury, unless in a particular case the evidence is so conclusive that reasonable minds cannot differ, at least, so far as increase of physical hazard is concerned."
The principles in these two general rules were correctly applied by the trial court when it submitted to the jury the issue of whether there had been a material and substantial increase in hazard because of the change of occupancy, and when it charged the jury that the burden was upon the defendant to prove by a preponderance of the evidence that there had been such an increase, as alleged in its affirmative defense. By the same reasoning, however, the court erred when, a month after the trial, it entered the judgment for the defendant notwithstanding the jury's verdict for the plaintiff.
In this appeal the plaintiff-appellant has also assigned as error the Circuit Court's entry, two days after entering the judgment non obstante veredicto, of an order granting the defendant's motion for a new trial "in the event said judgment for the defendant be reversed. * * * Such an order upon the said condition seems to be authorized under paragraph (c) of Rule 2.7, of the Florida Rules of Civil Procedure, in conjunction with the form of order approved by the Supreme Court of Florida as appropriate under Rule 2.7 (Form 6 in 31 F.S.A., pages 67 and 68). Also see our decisions in King v. Jacksonville Coach Co., 122 So.2d 480 (1960) and McCloskey v. Louisville & Nashville Railroad Co., 122 So.2d 481 (1960).
One of the grounds set forth by the trial court in the said order conditionally granting a new trial, and what we conceive to be that court's principal ground, is that the "defendant's evidence of material increase in hazard stands uncontradicted, it being the only evidence adduced at the trial upon this issue raised by the defendant's affirmative defense."
While we readily recognize that a trial court has a broad discretion in granting new trials (see, for instance, Cloud v. Fallis, 110 So.2d 669 (Fla. 1959) and Ford v. Nathan, 166 So.2d 185 (Fla.App. 1964)), under the view which we take of the evidence at the trial, it was the jury's exclusive function to determine the said factual issue and there was ample evidence to support the jury verdict, so we feel that the trial court abused its discretion in granting the new trial upon the mentioned condition. *218 We see no need in law or in justice in awarding a new trial.
In view of our above holdings that the judgment appealed from was erroneously entered, there is no need here to discuss the other points raised by the appellant in this appeal. Also, we have considered the points raised by the appellee in its cross-assignments of error, and have found them to be without substantial merit.
For the foregoing reasons, the judgment appealed from is reversed and the cause is remanded with directions to enter a judgment for the plaintiff-appellant in accordance with the jury's verdict.
Reversed and remanded with directions.
WIGGINTON, Acting C.J., concurs.
STURGIS, J., concurs specially.
STURGIS, Judge (concurring specially).
I concur in the conclusion but am concerned that our reference to rule 2.7(c), Florida Rules of Civil Procedure and to "Form 6" promulgated by the Florida Supreme Court for use in conjunction therewith, may be construed as placing the stamp of approval on the proposition that the trial court has unlimited power, upon entering a judgment non obstante veredicto, to order a new trial in the event such judgment is appealed and reversed. In the light of this court's experience with the rule, I am now of the opinion that it should be strictly construed according to the clear intent of the rule proper as vesting the trial court with power to override a jury verdict by granting a renewed motion for directed verdict or for judgment n.o.v. or by granting a motion for a new trial, but not both, and that there should be no exception where, as in this case, the course of action is bottomed upon questions involving the sufficiency of the evidence, which it is normally the function of the jury to resolve. I am assisted in this conclusion because I am persuaded that the "forms" are not efficient to dignify, modify, or explain the rules of procedure; that they are at most a helpful hint to the draftsman. Where one must yield, the rule proper should prevail. I am aware that in King v. Jacksonville Coach Co., 122 So.2d 480 (Fla.App. 1960), this court approved an order granting a new trial in the alternative to a judgment n.o.v., contingent on the latter being reversed on an appeal. It will be observed, however, that in that case the new trial was predicated on a fundamental error in giving a challenged charge on the last clear chance doctrine.
The case of McCloskey v. Louisville & Nashville Railroad Co., 122 So.2d 481 (Fla. App. 1960), sheds no light on the problem with which we are confronted. In that case we reversed a judgment n.o.v. and remanded the cause with directions to dispose of a motion for new trial that had been joined with the motion for judgment n.o.v. but had not been acted upon. The writer, who authored that opinion in McCloskey, in referring to "Form 6" which is captioned as an "Order Granting Motion for Judgment Notwithstanding Verdict and Granting New Trial Conditioned Upon Reversal of Judgment," stated that the purpose of such procedure was to expedite the cause by permitting the ruling on the motion for new trial to be reviewed, in the event of appeal, in conjunction with a review of the order granting judgment n.o.v., and so that if the judgment n.o.v. is reversed, the ruling on the motion for new trial may not form the predicate for an assignment of error upon a subsequent appeal. That observation was obiter because, as has been said, in that case the trial court had not ruled on the motion for new trial. The instant appeal is distinguishable because the trial court has in fact passed on the motion for a new trial and, contingent on the result of this appeal, has granted same on evidentiary grounds.
I deem it pertinent to observe that the construction given in the federal courts is of little value. There is traditionally a *219 great difference between the powers exercised at the trial level by federal as compared to state courts in such matters. Judges in state courts exercise less control and rely more strictly upon the letter of the law in the conduct of trials. There is no question whatever in the case under consideration of any design or purpose on the part of the distinguished trial judge to substitute his views for that of the jury or in any way coerce the parties. Philosophically, I deem it advisable not to vest in the trial judges unlimited discretion to put a party to the pains of a new trial in the event he should successfully prosecute an appeal attacking a judgment n.o.v. This assumes, of course, that there is no fundamental error warranting a new trial, in which event an order so limited should be adequate for the purposes of justice under the law.