193 So.2d 35 (1966)
Virginia B. MORGAN, Individually, and Virginia B. Morgan, As Administratrix of the Estate of Edward Lee Morgan, Deceased, Appellant,
v.
COLLIER COUNTY MOTORS, INC., Appellee.
No. 6938.
District Court of Appeal of Florida. Second District.
December 16, 1966.
*36 B. Clarke Nichols, of Carroll, Vega, Brown & Nichols, Naples, for appellant.
Julian D. Clarkson, of Henderson, Franklin, Starnes & Holt, Ft. Myers, for appellee.
*37 LILES, Judge.
Appellant, plaintiff below, brings this appeal from a final judgment entered by the trial court in favor of appellee Collier County Motors, Inc., defendant below.
Plaintiff brought an action against defendant Collier County Motors and one Kermit Graham seeking damages for the alleged wrongful death of her son as a result of the negligent operation of an automobile by Graham. Graham is not a party to this appeal. Plaintiff's theory of recovery was that defendant was vicariously liable as the owner of the automobile driven by Graham and as Graham's employer, it being alleged that Graham was operating within the scope of his employment at the time of the accident.
The case was tried twice before a jury. At the conclusion of plaintiff's case in the first trial, the trial court directed a verdict for defendant on the issue of ownership. The trial, however, resulted in a mistrial. The trial court in denying defendant's motion for a directed verdict on the employer-employee issue ordered that its ruling as to ownership would carry over to the next trial.
The issue of whether Graham was operating within the scope of his employment at the time of the accident was tried at the second trial. The jury returned a verdict against defendant. Pursuant to defendant's motion, the trial judge entered a judgment notwithstanding the verdict and ordered that should the judgment be reversed on appeal, a new trial would be granted on the issue of damages unless plaintiff agreed to a remittitur.
On appeal, this Court is asked to determine whether it was error for the trial court to direct a verdict in defendant's favor on the issue of ownership and whether it was error to enter a judgment notwithstanding the verdict in defendant's favor as to the issue of Graham's status as defendant's employee at the time of the accident. We will deal first with the issue of ownership.
The evidence reflects that Graham was employed by defendant as an automobile salesman. He purchased the automobile in question from defendant as a demonstrator. The title certificate to the automobile was issued in Graham's name, and he carried collision insurance on the car. The purchase was financed through a commercial financing institution on very favorable terms, and if Graham sold six new cars in any one month, defendant would make the current payment for that month. The automobile would be sold from defendant's sales lot after six months, but Graham would neither receive any profit nor bear any loss resulting from the transaction. Graham would get no commission from the sale of any demonstrator, whether his or another salesman's. Defendant held a power of attorney, executed by Graham when the automobile was purchased, enabling defendant to sell the automobile. Graham bought the license tag for the car and furnished his own gasoline and oil. His use of the demonstrator was unrestricted within a radius of 150 miles. Permission from defendant and the financing institution was required to take the automobile beyond that distance.
We agree with plaintiff that naked legal title does not determine ownership in considering tort liability but that this ownership is determined by the party having the beneficial interest with control and authority of the automobile's use. Wilson v. Burke, 53 So.2d 319 (Fla. 1951); Palmer v. R.S. Evans, Jacksonville, Inc., 81 So.2d 635 (Fla. 1955); Cox Motor Co. v. Faber, 113 So.2d 771 (D.C.A.Fla. 1959). We do not agree, however, that the evidence presented shows beneficial ownership in defendant company.
Nichols v. McGraw, 152 So.2d 486 (D.C.A.Fla. 1963), involves a factual situation *38 similar to the instant case. There McGraw, an automobile salesman employed by Gerlach Motor Company, was required to purchase a new automobile in order to demonstrate the cars sold by his employer. The company sold the demonstrator to McGraw at cost and helped arrange a financing plan not normally available to the general public. The company also furnished one of its dealer's tags to McGraw for his unrestricted use. The Court, in affirming summary judgment for Gerlach, stated in part that:
"As to the ownership of the automobile driven by McGraw and involved in the accident, it is not controverted that prior to the date of the accident an application for title duly executed by Gerlach as seller and McGraw as purchaser was filed with the Tax Collector of Santa Rosa County nine days prior to the accident. This record poses no question as to subterfuge  McGraw bought the car, operated same in the business of Gerlach and for his own personal use. * * *" 152 So.2d at 490.
Here, Graham purchased the automobile, title thereto was issued in his name, and he used the automobile both in defendant's business and for his own personal use. The only restriction upon his use was the requirement that he obtain permission from defendant and the financing institution to take the automobile beyond a 150-mile radius (a common provision of commercial financing transactions). Defendant did not otherwise limit or restrict Graham's use of the vehicle. In view of the principles discussed above, it would appear that Graham enjoyed the beneficial as well as the legal ownership of the automobile in question.
A defendant's motion for a directed verdict should be granted where no evidence is submitted upon which a jury could lawfully return a verdict for the plaintiff. C. & H. Contractors, Inc. v. McKee, 177 So.2d 851 (D.C.A.Fla. 1965). Here there was no evidence upon which the jury could determine otherwise, and thus the trial court committed no error in directing a verdict in defendant's favor on the question of ownership of the automobile.
The question of whether Graham was in the scope of his employment also presents a difficult set of facts. The usual working hours at Collier Motor Company were from 8:30 a.m. to 5:00 p.m. Salesmen, including Graham, spent two days a week at defendant's place of business. During those two days they worked regular hours. The remainder of Graham's time was spent on locating and cultivating outside prospective buyers. He had no regular hours for this "outside" time but did fill out a form to turn in at sales meetings indicating how many contacts were made on outside time. Graham claimed that approximately 75 per cent of his sales came as a result of outside work. He also stated that he always kept an eye open for a prospective buyer.
On the date of the accident, Graham had worked at defendant's place of business. He left work about 5:00 p.m. to go to a motel which he managed so he could rent rooms for the night. About 9:30 or 10:00 that night he drove out to the Palm River Marina to visit two friends. Graham had a drink of whiskey, visited with his friends, and left with one of these persons about 11:30 to drive to a bowling alley. The accident occurred when Graham drove from the marina parking lot into the highway.
The only evidence presented as to why Graham had gone to the marina and why he was going to the bowling alley was the testimony of Graham himself. The best that can be said of this testimony is that it is conflicting. On direct examination Graham testified that he went to the marina to see owner-operator Bob Tanner and anyone else who happened to be there. He stated that Tanner wanted a four-wheel drive pickup; that he did not have one; but that he always tried to keep in touch *39 with his prospects. Graham said he thought he mentioned the vehicle to Tanner that night. Parenthetically we note that while Tanner testified that Graham was in his establishment on the night of the accident and that Graham talked to him, Tanner did not relate the nature of the conversation.
On cross-examination Graham testified that he did not go to the marina for the specific purpose of discussing the vehicle with Tanner. Graham acknowledged that he had given a statement shortly after the accident to the effect that he had not discussed any deal with Tanner on the night of the accident and that the statement was true. On re-direct examination Graham stated that he "probably" mentioned the vehicle to Tanner "* * * because I usually mention it every time I went out there." Graham also testified that he didn't remember the subject of his conversation with Tanner but then said he did talk with Tanner about a four-wheel drive truck.
As for the purpose of his trip to the bowling alley, Graham stated at various times that he was going there to look for prospective buyers; that he had nothing in particular planned when he started for the bowling alley; that he might have bowled and that he had no idea who would be there.
Several cases in various jurisdictions have held that an automobile salesman involved in an accident while his automobile was being used for social purposes could be found to have been in the scope of his employment. See, Annot., 53 A.L.R.2d 631, and cases cited therein. Likewise, a number of cases have held that a salesman could not be found to have been within the scope of his employment under such circumstances. However, in the cases which hold that the salesman could have been in the scope of employment while engaged in social activities there was evidence that the salesman had some specific business contact in mind in connection with his social contacts. Even in Thurston v. Morrison, 141 So.2d 291 (D.C.A.Fla. 1962), cited by the plaintiff as controlling, there was evidence that the salesman involved in that case contacted a specific prospect.
While it might be said that there is evidence that Graham's trip to the marina was for the purpose of contacting a specific customer, no such evidence was presented as to the reason for the trip to the bowling alley. The best that can be said is that Graham hoped to run into a likely-looking prospect at the bowling alley but that he had no particular person in mind. If the trip to Tanner's marina was within the scope of defendant's business, that business ended when Graham started for the bowling alley. The proposed bowling alley excursion was a social deviation which could hardly be considered within the scope of Graham's employment.
The rules governing judgments notwithstanding the verdict are the same as those governing motions for directed verdict. Smith v. Peninsular Insurance Co., 181 So.2d 212 (D.C.A.Fla. 1965). As pointed out above, such a motion should be granted where no evidence is presented on which the jury could lawfully return the verdict rendered. Since there was no evidence presented from which a jury could find that Graham was in the scope of his employment when he started for the bowling alley, the trial judge did not err in entering judgment for defendant. The final judgment appealed is therefore affirmed.
In view of our decision, it is unnecessary for us to pass upon defendant's cross-assignment of error.
Affirmed.
ALLEN, C.J., and PIERCE, J., concur.