PIERCE, Judge.
Appellants Allen Lee Cheek and Charles William Johnson, d/b/a Cheek & Johnson, and Edna Watson, real estate brokers, appeal from an order setting aside a verdict and judgment in their favor as plaintiffs and entering judgment for defendant-appellee Alma Long.
On February 28, 1967, Mrs. Long signed an “Exclusive Right of Sale” Agreement to sell her property containing approximately 135 acres for $35,000.00. There is no evidence that Mrs. Long knew the acreage or front footage on Highway No. 92, where her boundaries were, or that she determined the selling price on any acreage calculation. A few days after signing the exclusive listing Mrs. Long learned from the local Tax Assessor’s office that there were around 115 acres in the property, and she conveyed this information to appellant Watson. After negotiations through appellant Johnson, a co-operating broker, Mrs. Long and one Mark Reynolds signed a “Receipt for Deposit Offer to Purchase and Contract of Sale” prepared by the brokers and dated July 27, 1967, in which the property was listed as approximately 110 acres more or less with highway frontage of approximately 725 feet. Provision 8 of this agreement provides in part that “if the Buyer desires a survey on the property, he may have the property surveyed at his expense prior to closing date.” Reynolds demanded a survey. Mrs. Long refused to pay for one and appellants agreed to obtain and pay for one out of their commission. The surveyor declined to make the survey, but based on his field notes he disclosed to all parties that he did not believe the property contained 110 acres or 725 feet frontage on Highway 92. Reynolds refused to close on the terms of the contract and made a counter offer to buy the property on the basis of $310.00 per acre if the highway frontage was 725 feet, $300.00 per acre if the highway frontage was approximately 625 feet, or $290.00 per acre if the highway frontage was 525 feet. Mrs. Long declined this counter offer and Reynolds refused to close the sale. Appellants returned the cash deposit of $1,000.00 to Reynolds without the knowledge or consent of Mrs. Long. Appellants demanded their real estate brokerage commission from Mrs. Long and upon Mrs. Long’s refusal to pay, instituted this action in the lower Court. Mrs. Long counterclaimed for one half of the deposit which was returned to Reynolds.
Appellants contend that they performed all the conditions of their contract with Mrs. Long in that they procured a purchaser ready, willing and able to purchase Mrs. Long’s property for the price and on the terms specified but that the sale was not consummated because of the deficiency in the amount of acreage represented by the owner. Mrs. Long asserts that the sale of the property was not consummated through any fault of hers, and that consequently the conditions of the contract were not met by the appellants.
Appellants argue that they had a right to rely on the representations of Mrs. Long as to the quantity of land offered for sale and that failure of the purchaser to consummate the sale because of deficiencies of quantity was not the fault of the brokers. The cases relied on by appellants are not analogous to the factual situation here.
We find no cases directly in point. In Sullivan v. Brown, 1914, 67 Fla. 133, 64 So. 455, there, was a deficiency in the quantity of land and our Supreme Court held that the broker was entitled to his compensation where there was no guilty knowledge of the *351 deficiency on the part of the broker. The Court said:
“As the owner referred the broker to the tax books for the dimensions of the property the owner is bound by the reference, and as the evidence does not tend to show misrepresentations or guilty knowledge on the part of the broker, before a binding contract of sale was made, the latter cannot be deprived of his commissions because the tax books to which the owner referred the broker for dimensions of the land showed more land than the seller owned.” (Emphasis supplied).
In R. J. & B. F. Camp Lumber Co. v. Tedder, 1919, 78 Fla. 183, 82 So. 865, a case dealing with a defect in title rather than a deficiency in quantity of land, the Court said:
“Tedder [the broker] was assured that the titles were good, and he had the right to rely on that assurance, and if a sale for any part of the lands failed because of defective titles of which he had no notice, it was no fault of his, and he was entitled to his compensation for the sale of the entire acreage. * * * ”
(Emphasis supplied).
In Zide v. Zenchenko, Fla.App.1958, 101 So.2d 64, the 3rd District Court held that a real estate broker was not entitled to a commission on a sale that failed because of a defect in title where he had accepted employment with knowledge of the defect and the fact that it might preclude a sale.
And in Hardin-Lowrey Realty Co. v. Hine, Fla.App.1968, 213 So.2d 308, where the purchaser and the seller had entered a contract but the sale was not consummated because the purchaser’s attorney found a serious defect in the title, this 2nd District Court held that if the broker knew or should have known of title defects which defeated the sale, he was not entitled to his commission. See also Hart v. Pierce, 1929, 98 Fla. 1087, 125 So. 243; Knowles v. Henderson, 1945, 156 Fla. 31, 22 So.2d 384, 169 A.L.R. 600; 5 Fla.Jur., Brokers, § 50; 12 C.J.S. Brokers § 95(4), p. 227; 156 A.L.R. 1387.
In the case sub judice the brokers did have or should have had knowledge of the deficiency before the Reynolds contract was made. The listing agreement provided that the realtor was obligated “to carefully inspect [the] property and secure complete information regarding it.” This they did not do. Appellant Watson admitted that Mrs. Long did not intentionally misrepresent the land to her and that Mrs. Long was acting in good faith when she told the broker that she had about 135 acres of land. She also stated that there was a good deal of uncertainty about the amount of frontage and acreage and that she learned from an engineer (who was interested in buying the property), the local title company, Mrs. Long and several persons at the Courthouse that there were not 135 acres in the property before the Reynolds contract was signed. Out of an abundance of caution the brokers described the property in the Reynolds contract which they prepared as containing approximately 110 acres more or less.
We hold, as did the lower Court, that where a broker is put on notice that a deficiency in quantity may exist, he is bound to make reasonable inquiry, especially if he is required by contract to “carefully inspect and secure complete information” regarding the property, and if he fails to do so he should not be permitted to collect his commission in the event the sale is not consummated by virtue of that deficiency.
Appellants contend that Mrs. Long never pleaded or raised in a motion the defense that the brokers knew or should have known of the shortage in acreage, and, therefore this defense was not available to her. The “Exclusive Right of Sale” agreement, in which the realtor agreed to “carefully inspect the property and secure complete information regarding it”, was introduced in evidence, and appellants did not object to testimony regarding their knowl *352 edge of the shortage. Failing to raise the defense was cured by the evidence and Rule 1.190(b) RCP, 30 F.S.A.; Robbins v. Grace, Fla.App.1958, 103 So.2d 658; Finley P. Smith, Inc. v. Schectman, Fla.App.1961, 132 So.2d 460.
Appellants next contend that they had secured a “binding written contract” from the purchaser and therefore they had earned their commission. The employment was an “Exclusive Right of Sale” agreement as distinguished from a contract “to find a purchaser,” and the brokers were to receive a percentage of the sales price. The Reynolds sales contract provided that the seller agreed to pay the broker a commission out of the first moneys received. As in the case of Hardin-Lowrey Realty Co., supra, the parties, after signing a contract of sale, obviously intended that the transaction would be completed. In that case we held that “the contract is binding as between the seller and broker unless the broker had notice of defects which would preclude consummation of the sale.”
The next point challenges the trial Judge’s order which allegedly shows on its face that he considered the evidence conflicting, but, nevertheless, drew inferences different from those that the jury had a right to draw.
The memorandum of the trial Court stated that “the evidence concerning the determination of acreage and frontage is conflicting and uncertain and insufficient to clearly establish any deficiency in highway frontage or acreage or the amount of any deficiency.” A survey of the property was never made, so the exact amount of the deficiency was not established, but that there was uncertainty about the amount of acreage before the Reynolds contract was signed is not in dispute. This was testified to by the brokers themselves. The employment of appellants and terms thereof requiring them to secure complete information about the property are undisputed. It is undisputed that appellants produced a purchaser who executed a contract to purchase on the terms agreed to by Mrs. Long, but that the sale was not consummated. As we view the evidence with all lawful inferences therefrom it does not as a matter of law tend to establish that the appellants had procured a binding contract or had earned a commission for the sale of the property involved. Therefore, the trial Judge was within his right in setting aside the verdict and judgment and entering a judgment notwithstanding the verdict, or in accord with the motion for directed verdict. Panoz v. Gulf and Bay Corporation of Sarasota, Fla.App.1968, 208 So.2d 297, cert. den. Fla., 218 So.2d 166; Morgan v. Collier County Motors, Inc., Fla.App.1966, 193 So.2d 35; cf. Hendricks v. Dailey, Fla.1968, 208 So.2d 101, and cases cited therein.
Appellants next argue that Mrs. Long’s motion to set aside the verdict failed to state with particularity the grounds therefor, and the Circuit Court was without power to grant such motion. Appellee’s motion was based on the grounds that the verdict and judgment were contrary to the law and the manifest weight of the evidence.
During the trial, after appellants had rested their case, Mrs. Long’s counsel moved for a directed verdict, but ruling was reserved thereon. Again at the close of all the evidence counsel renewed the motion for directed verdict.
Under the present practice provided for by Rule 1.480 RCP, the ruling made on the motion for judgment notwithstanding the verdict, properly entitled “motion for judgment in accord with directed verdict,” is a deferred ruling on the motion for directed verdict. Smith v. Peninsular Insurance Company, Fla.App.1966, 181 So.2d 212; Whitman v. Red Top Sedan Service, Inc., Fla.App.1969, 218 So.2d 213, cert. den. Fla., 225 So.2d 537.
Since the motion for judgment notwithstanding verdict was made on the ground that the verdict was contrary to the law and the evidence and the motions for directed verdict set forth the grounds with par *353 ticularity, the trial Judge was authorized to grant appellee’s motion for judgment notwithstanding the verdict, which is treated here as a “motion for judgment in accord with directed verdict.” De Mendoza v. Board of County Commissioners, Fla.App.1969, 221 So.2d 797; McCabe v. Watson, Fla.App.1969, 225 So.2d 346.
The judgment appealed from is thereupon
Affirmed.
LILES, A. C. J., and McNULTY, J., concur.